# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| STEVEN C. KLEIHAUER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 12-0509-CV-W-BP-P |
| | ) | |
| LARRY DENNEY, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
## AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Steven C. Kleihauer, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on April 27, 2012, seeking to challenge his 2008 convictions and sentences for first degree robbery, armed criminal action, burglary, first degree tampering, and first degree assault, which were entered in the Circuit Court of Lafayette County, Missouri.

The petition raises two grounds for relief: (1) ineffective assistance of trial counsel; and (2) denial of a speedy trial. Respondent contends both grounds are procedurally defaulted.

## SUMMARY OF THE FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals summarized the facts as follows:

> Alvin Ford ("Ford") lived in Independence, Missouri, with Cordelia May George ("Ms. George") for fourteen years before her death in 2002. Ms. George's daughter, Terry George ("Terry"), lived with them part of the time. After Ms. George's death, Ford and Terry had a strained relationship because Ms. George left more of her assets to Ford than to her daughter. Ford used Ms. George's life insurance proceeds to purchase a house (that he moved to) in Odessa, Missouri, in February 2003.
>
> Terry began residing in her mother's house after Ford moved to Odessa. She and Ford were involved in probate litigation over her

mother's assets. Brad Hays ("Hays") agreed to assist Terry with the probate paperwork.

On May 28, 2004, Hays and [petitioner] were at Terry's house. Terry overheard Hays tell [petitioner] that Ford was doing things to Terry that Hays did not think Ford should be doing and that Terry did not deserve. Terry also overheard Hays and [petitioner] talking about going over to Ford's home in Odessa. After Hays and [petitioner] left George's house, Hays obtained a T-shirt with KCPD on it from a friend, Lisa Seevers. Hays told the friend that he and [petitioner] were going over to Ford's house to get some of Terry's belongings.

That same day at about 1:30 p.m., a man approached Ford's front door. The man was wearing a T-shirt, jeans, a white baseball cap, sunglasses, and was carrying a yellow tablet in a brown notebook. Ford opened the door to talk to the man, who claimed to be a census taker. They talked for a few minutes until the mailman came. Ford took his mail, went back inside his house, and started to shut the inside door, but the man claiming to be a census taker pushed Ford into the house, and they started to fight. The two fought through the house– in the living room, bedroom, and bathroom– as Ford tried to get away. In the bathroom, Ford fell between the lavatory and the bathtub. The man claiming to be a census taker hit Ford with a pistol three or four times, causing blood to run down his neck and face. With Ford on his stomach, the man claiming to be a census taker taped Ford's hands behind his back with duct tape, tied Ford's feet with an alarm clock cord, and put a T-shirt over Ford's head. Eventually, Ford worked the T-shirt up so he could see underneath it. Ford could see there were now two intruders. The intruders ransacked Ford's house.

Meanwhile, Ford's son-in-law, Alvin Edwards III, drove to Ford's house with his son and nephew with the intention of dropping the boys off so they could swim in Ford's pool. The boys went up to Ford's house, knocked on the door, and rang the doorbell, but Ford did not answer. Ford's truck was parked in the driveway. Mr. Edwards was concerned, so he told the boys to get in the car so they could go home and get the keys to Ford's house from his wife, Ford's daughter, Lisa Edwards.

Ford heard the knock at the door and his doorbell ring. The man claiming to be the census taker came into the bathroom, held a gun to Ford's temple, and told him, "[D]on't you yell or say something. Or if you do I'll shoot you."

Mr. and Mrs. Edwards and the boys went back to Ford's house. Mr. Edwards and the boys went to the front door and knocked, but Ford did not answer. When Lisa Edwards started walking up the sidewalk, an individual with dark hair, goatee, baseball cap, blue jeans, white gloves, and a T-shirt with KCPD Homicide in white lettering on the back, ran from behind Ford's house, down the driveway, and down the street. (Mr. and Mrs. Edwards later identified the man as Hays.) Shortly thereafter, another man wearing sunglasses, a T-shirt, and blue jeans, came out from the house, unlocked the passenger side of Ford's truck, and put two pillowcases containing items from Ford's house in the truck. He then unlocked the driver's side of Ford's truck and drove away. (At trial, Lisa Edwards identified the man as [petitioner].)

Lisa Edwards went to the back door of the house and started yelling for her father. He replied that he was in the bathroom, tied up. Mr. Edwards called 911. After the police and paramedics arrived and treated Ford, Lisa Edwards took her father to the hospital where his head wound was closed with five staples.

Soon thereafter, Ford's vehicle was reported abandoned in Bates City. At the scene, the police discovered a pair of white gloves with duct tape stuck to them, a yellow post-it note, a set of keys to Ford's truck, and Ford's deposit slips.

After abandoning Ford's vehicle, [petitioner] called a friend, Scott Walker ("Walker"), several times, asking Walker to pick him up in Bates City where he was stranded. Walker agreed, and he and his girlfriend, Kimberly Vickers ("Vickers"), left to pick up [petitioner]. When [petitioner] came out of the gas station where he was waiting, Vickers observed that he had shorts that were cut off at the knees, a T-shirt, and a black ball cap. He was fidgety, nervous, and said, "Let's get out of here." When they passed a police car with its lights on going the opposite direction, Walker asked [petitioner] if the police were after him. [Petitioner] said he did not know, but they could be. [Petitioner] told them that he had just robbed Terry's mom's boyfriend: he had hit the man in the head with a gun, knocked him out, and ransacked the house with another person. He said, "We went to go get that son of a bitch that robbed Terry's mom and someone caught us at the house."

[Petitioner] later told Walker that Hays was the other person that had gone to Ford's house with him. [Petitioner] had a gun in a leather carrying case under a clipboard. He had knocked on Ford's door and told Ford he was from the census department and wanted to ask some

-3-

> questions about the household. [Petitioner] told Walker that Ford was not going to open the door, so [petitioner] pushed his way in; they got into a struggle in the front room, and he got the gun out and hit Ford in the head hard enough to almost knock him unconscious. Hays helped [petitioner] duct tape Ford. Hays and [petitioner] then started ransacking Ford's house. The two were interrupted, and [petitioner] fled in Ford's truck.
>
> The morning after the burglary, [petitioner] returned to Terry's house with torn clothes; he was frantic and upset. He told Terry that he and Hays had robbed Ford's house and had hit Ford over the head, knocked him down, and taped him up. Terry called her friend, Sheila Vaughn ("Vaughn"), and asked Vaughn to come to her house and pick up [petitioner]. When Vaughn arrived, she observed that [petitioner] was very nervous, his head had been half shaved, and his clothing was torn; when he left with Vaughn, [petitioner] told Vaughn that he had messed up. He told her that he and Hays had robbed someone.
>
> [Petitioner] was charged with, and convicted after a jury trial, of robbery in the first degree, armed criminal action, burglary in the first degree, tampering in the first degree, and assault in the first degree; he was sentenced, respectively, to life, fifty years, thirty years, fifteen years, and thirty years, all sentences to run consecutively with each other and all previously imposed sentences. His convictions were affirmed on direct appeal. *State v. Kleihauer*, 266 S.W.3d 271, 272 (Mo. App. W.D. 2008). He timely filed a Rule 29.15 motion for post-conviction relief. An amended motion was timely filed by counsel. After an evidentiary hearing, the motion court entered judgment denying [petitioner's] amended motion.

(Respondent's Exhibit P, pp. 2-5).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state

---

[1]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State

court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURAL DEFAULT**

In ground 1, petitioner contends that trial counsel was ineffective for failing to secure certain evidence such as Walker's telephone records, surveillance tapes from the Bates City convenience store, records from the hotel where petitioner allegedly hid, and testimony of Eugene George Scarlett before he died. In ground 2, petitioner contends that he was denied a speedy trial because he was appointed five attorneys in succession, none of whom provided effective assistance of counsel.

Respondent correctly maintains that grounds 1 and 2 are procedurally defaulted. In Coleman v. Thompson, 501 U.S. 722 (1991), the Supreme Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Id. at 750. Cause, actual prejudice, and the probability of a "fundamental miscarriage of justice" are to be judged under criteria set out in Wainwright v. Sykes, 433 U.S. 72 (1977), and Murray v. Carrier, 477 U.S. 478 (1986). Coleman, 501 U.S. at 748-50.

A review of the record shows that petitioner raised grounds 1 and 2 in his Rule 29.15 post-conviction relief motion, but did not pursue either ground on appeal from the denial of that motion. Therefore, grounds 1 and 2 are procedurally defaulted.

---

court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-5-

Because petitioner's grounds are procedurally defaulted, they may not be reviewed by this Court unless petitioner can demonstrate cause and actual prejudice, or that failure to consider his claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. The Court will not reach the "prejudice" component of the analysis unless it first finds that the petitioner has demonstrated "cause" for his procedural default.

Petitioner does not present any explanation for why grounds 1 and 2 were not pursued on appeal from the denial of his Rule 29.15 motion and, therefore, has failed to demonstrate cause for his procedural default.[2] As a result, we do not consider prejudice. The Court, however, can still reach the merits of his claims if petitioner can show that he is "probably actually innocent" of the crimes for which he was convicted. Bowman v. Gammon, 85 F.3d 1339, 1346 (8th Cir. 1996), cert. denied, 520 U.S. 1128 (1997). To demonstrate his innocence, petitioner must satisfy a two-part test: First, he must support his allegations of constitutional error "with new reliable evidence. . . that was not presented at trial." Second, he must establish "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id., citing Schlup v. Delo, 513 U.S. 298 (1995). Petitioner fails to make this showing.

Petitioner has failed to show cause for his default of grounds 1 and 2. He does not show that a manifest injustice will occur if these grounds are not reviewed on the merits, and he has failed to meet the Schlup standard for actual innocence. Id. Therefore, federal review of grounds 1 and 2 is

---

[2] Petitioner asserts that the Supreme Court's recent holding in Martinez v. Ryan, 132 S.Ct. 1309 (2012), applies to his case and creates a constitutional right to effective assistance of post-conviction counsel at all stages, thereby excusing all procedural default. However, the Martinez holding only allows ineffective assistance of post-conviction counsel as a means to show cause for procedurally defaulting a claim of ineffective assistance of trial counsel because otherwise, such a claim would never be reviewed by any court. In petitioner's case, his claims were presented in his amended Rule 29.15 motion, reviewed by the motion court, and subsequently denied. Martinez does not create a right to further review of petitioner's procedurally defaulted grounds.

barred.

Grounds 1 and 2 are denied.

## **CERTIFICATE OF APPEALABILITY**

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## **ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

    /s/ Beth Phillips
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: July 31, 2012.